IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TONNELLE NORTH BERGEN, LLC, and THOMAS VERRICHIA | : : : | |
| Petitioners, | : : | |
| v. | : : | NO. 23-CV-03136 |
| SB-PB VICTORY, L.P. | : : | |
| Respondent. | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                    **NOVEMBER 9, 2023**

### I.    INTRODUCTION

This petition arises from a breach of contract dispute that was submitted to arbitration. Per stipulation of the parties, the arbitrator issued his decision in two phases. The arbitrator found in favor of SB-PB Victory, L.P. ("SB-PB"), and against Tonnelle North Bergen, LLC and Thomas Verrichia ("Tonnelle") in Phase II, assessing damages in the amount of $5,0127,443.48. Tonnelle filed a petition to vacate that award (ECF No. 1), and SB-PB filed a cross-motion to confirm the award (ECF No. 16). These filings are now ripe for review.

### II.    BACKGROUND AND PROCEDURAL HISTORY

The facts of this case are spelled out at length in the parties' briefing and three opinions by the arbitrator. Because the Court writes for the benefit of the parties, we will assume familiarity with the case and summarize briefly.

1

Mark Franklin is the president of SB-PB, a real estate financing firm based in Texas. *See* ECF No. 1-4 ("Phase I Award") at 5. SB-PB sought Verrichia's business in August 2018. *Id.* As a result of these discussions, Verrichia created a borrowing facility to finance the acquisition and development of real estate projects for Wawa, Inc. and Chik-Fil-A, Inc. in Hudson County, New Jersey, known as the "Tonnelle Project." *Id.* SB-PB and Tonnelle executed a loan agreement under which SB-PB would loan Tonnelle up to $17,221,780 in order for Tonnelle to acquire and develop the property for the Tonnelle Project. *Id.* at 6. At the same time, Vericchia executed a guaranty agreement, in which he guaranteed prompt payment of the debt under the loan agreement. *Id.*

The loan agreement contained several right of first refusal ("ROFR") provisions. Sections 4.27(a) and 4.27(c) required Tonnelle to submit a request for a loan to SB-PB if it acquired new property for development, or opted to further develop refinance project, respectively. *See* ECF No. 1-5 ("Phase II Partial Final Award") at 10. Both provisions required the loan requests to have interest rates of no less than 10% per annum, and a closing fee of 1% of the amount of the loan. *Id.* These provisions did not require SB-PB and Tonnelle to agree to terms but required Tonnelle to request that SB-PB make a proposal. *Id.* Section 4.27(b) provided that certain of Tonnelle's affiliates would obtain loans within 45 days of execution of the contract. Phase I Award at 7. This section also provided some material terms of the loans. *Id.* Additionally, the contract contained a survival provision in § 4.27(f), which stated that "Notwithstanding anything to the contrary herein, in the other loan documents, satisfaction of the indebtedness, or maturity of the loan, the terms set forth in this section 4.27 shall survive in full force and effect for thirty-six (36) months after the date hereof." ECF No. 1-9 ("Tonnelle's Memorandum of Law") at 7.

The loan agreement was executed on August 30, 2019. Phase I Award at 6. Tonnelle had not closed on the refinancing required under § 4.28(b) by the deadline of October 14, 2019, and

on December 12, 2019, SB-PB sent Tonnelle a notice of non-monetary default. *Id.* at 10-11. Negotiations between the parties continued over the next several months, but Tonnelle failed to repay the loan when in matured on November 30, 2020, and Verrichia similarly failed to repay the loan in his role as guarantor. *Id.* at 14. As a result, SB-PB accelerated the loan with the entire principal and interest, and then provided notice of monetary default to Tonnelle on December 1, 2020. *Id.*

Following the notices of default, Tonnelle continued to do business, and obtained financing on fifteen Two Farms locations and one Hatboro Wawa location, but Tonnelle did not submit a loan request to SB-PB. Phase II Partial Final Award at 16. Tonnelle submitted a loan request for further development of a Warwick project, which SB-PB accepted, but then Tonnelle obtained financing from a different entity instead of SB-PB for that project. *Id.* at 16-17.

Tonnelle filed a demand for arbitration, which was ultimately split up into two phases. *See generally*, ECF No. 1-7. In Phase I, the arbitrator was tasked with assessing liability and damages stemming from the alleged monetary and non-monetary defaults. Phase I Award at 2. That proceeding included extensive motion practice and a five-day evidentiary hearing which included the testimony of numerous fact and expert witnesses and the submission of hundreds of exhibits. *Id.* at 2-3. The parties submitted pre-hearing briefs, post-hearing briefs, and proposed findings of fact and conclusions of law. *Id.* Following that proceeding, the arbitrator found that § 4.28(b) was an unenforceable agreement-to-agree, so no breach occurred as to the non-monetary default. *Id.* at 17-19. However, the arbitrator also found that Tonnelle breached the agreement with its monetary default and assessed damages in the amount of $19,335,976.29. *Id.* at 23. The parties signed a stipulation confirming that award. *See* 2:22-cv-05043-CFK, ECF No. 18.

The parties then stipulated that Phase II of the arbitration would focus on whether Tonnelle breached the loan agreement by failing to submit loan requests to SB-PB pursuant to the ROFR provisions in § 4.27(a) and (c). Phase II Partial Final Award at 7. Prior to ruling, the arbitrator conducted an additional four-day evidentiary hearing, at which fact and expert witnesses testified, and hundreds of exhibits were submitted, accompanied by pre-hearing and post-hearing briefs. *Id.* At the conclusion of that proceeding, the arbitrator found that the ROFR provisions survived default, and Tonnelle was liable for obtaining financing on several projects without first submitting loan requests to SB-PB, assessing damages in the amount of $5,127,443.48, plus any interest that accrues until the award is confirmed. *Id.* at 21.

Tonnelle then brought this action to vacate Phase II of the arbitration, arguing that the arbitrator exceeded his powers by misinterpreting the contract throughout his decision, manifestly disregarded the relevant law, and displayed evident partiality towards SB-PB. *See generally* ECF Nos. 1, 1-9. SB-PB cross-moved to confirm Phase II of the arbitration. ECF No. 16. These filings are now ripe for review.

### III.  STANDARD OF REVIEW

A federal district court's review of an arbitration award "could be generously described only as extremely deferential." *Dluhos v. Strasberg*, 321 F.3d 365, 372 (3d Cir. 2003). Congress has established a "strong federal policy in favor of commercial arbitration," and a reviewing court must "begin with the presumption that the award is enforceable." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012). Within this scheme, a court may vacate an arbitration award only for the reasons defined in Section 10 of the Federal Arbitration Act. *Hall Street Assocs. LLC v. Mattel, Inc.*, 552 U.S. 576, 586-87 (2008).

As relevant here, an award can be vacated if "there was evident partiality or corruption in the arbitrators" or "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. §10(a)(2),(4).

An arbitrator is only deemed to have exceeded his powers "when he decides an issue not submitted to him, grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether." *Sutter*, 675 F.3d at 219-20 (citations omitted). For an award to be considered irrational, "there must be absolutely no support at all in the record justifying the arbitrator's determinations." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 295 (3d Cir. 2010). Thus, it is not proper for this Court to "correct factual or legal errors made by an arbitrator and courts should not re-weigh the evidence to decide whether to vacate the award." *Southco, Inc. v. Reell Precision Mfg. Corp.*, 556 F.Supp.2d 505, 510 (E.D. Pa. 2008) (citing *Major League Umpires Ass'n v. Am. League of Pro. Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2004)). The reviewing court "will uphold an award even if the arbitrator engaged in improvident, even silly, factfinding." *Ario*, 618 F.3d at 296 (internal quotes and citation omitted). The arbitrator's decision "need be neither wise nor internally consistent" to be confirmed. *Citgo Asphalt Refin. Co. v. Paper, Allied-Indus., Chem., & Energy Workers Int'l Union Local No.2-991*, 385 F.3d 809, 816 (3d Cir. 2004) (internal quotes and citation omitted).

Petitioner also alleges that the arbitrator exhibited manifest disregard for the law in coming to his conclusion. Since the Supreme Court's ruling in *Hall Street* that "the grounds for vacatur . . . provided by [§] 10 . . . of the FAA are exclusive," a circuit split has developed as to whether arbitration awards can be vacated based on manifest disregard for the law. 552 U.S. at 581. The

5

Third Circuit has not yet taken a position on this issue. *See Sabre GLBL, Inc v. Shan*, 779 F. App'x 843, 849 (3d Cir. 2019). Therefore, courts in this circuit have proceeded assuming that manifest disregard is a viable theory, but without deciding so. *See e.g.*, *Simons v. Brown*, 444 F.Supp.3d 642, 655-56 (E.D. Pa. 2020) ("In two prior cases, I assumed without deciding that manifest disregard remains a viable basis for vacation.").

An arbitrator displays manifest disregard when he issues a decision that "fl[ies] in the face of clearly established legal precedent, such as where an arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." *Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 121 (3d Cir. 2016). An award is not subject to vacatur if it relies upon "an erroneous interpretation of the law." *Bellantuono v. ICAP Secs. USA, LLC*, 557 F. App'x 168, 174 (3d Cir. 2014) (quoting *Dluhos*, 321 F.3d at 369). Instead, the law requires a "willful flouting of known, governing law." *Paul Green Sch. of Rock Music Franchising, LLC. v. Smith*, 389 F. App'x 172, 178 (3d Cir. 2010). The alleged disregard "must appear clearly in the record of the arbitration, and there must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Royal Bank Am. v. Kirkpatrick*, Nos. 11-1058, 11-1112, 2011 WL 4528349 at *4 (E.D. Pa. Sept. 30, 2011) (citing *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005)).

To vacate an arbitration award on the basis of partiality, a party must demonstrate "circumstances powerfully suggestive of bias" such that "a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration." *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1523 n.30 (3d Cir. 1994) (internal quotes and citations omitted). This standard necessitates a showing of actual bias by the arbitrator, not just an appearance of bias. *See Stone v. Bear, Stearns & Co., Inc.*, 872 F.Supp.2d 435, 447 (E.D. Pa. 2012).

## IV.     DISCUSSION

Tonnelle takes issue with several of the arbitrator's rulings, claiming that he exceeded his authority by rewriting the contract, manifestly disregarded controlling Texas law, and displayed evident partiality towards SB-PB. Most of Tonnelle's claims arise under its allegations that the arbitrator exceeded his authority by re-writing the parties' contract.

### I.     Whether §§ 4.27(a) and (c) are enforceable?

Tonnelle first attacks the portion of the arbitrator's decision that ruled §§ 4.27(a) and (c) enforceable and subjected Tonnelle to damages. Tonnelle points to the arbitrator's decision in Phase I that § 4.27(b) was an unenforceable agreement to agree, and asserts that §§ 4.27(a) and (c) are even less definitive than § 4.27(b), such that the arbitrator acted irrationally in concluding §§ 4.27(a) and (c) were enforceable when § 4.27(b) was not. Tonnelle's Memorandum of Law at 12-13. Tonnelle also argues that the arbitrator ignored testimony from SB-PB's president stating that the company was not required to agree to any loan provision. *Id.* at 13.

In fact, the arbitrator explicitly contrasted §§ 4.27(a) and (c) with § 4.27(b), reasoning that the former required Tonnelle to submit a proposal with minimum terms, whereas the unenforceable § 4.27(b) went further in requiring an actual agreement, but without including material terms. Phase II Partial Final Award at 10-11. And even though SB-PB is not required to *agree* to Tonnelle's loan proposal, Tonnelle was still required to *make* a proposal under the contract. Regardless of whether this reasoning is persuasive, it certainly falls within the bounds of rationality.

### II.     Whether the arbitrator's damages based on the interest rate of 10% are proper?

Tonnelle continues protesting against the damages provisions by arguing that the arbitrator impermissibly re-wrote the contract when he assessed damages using a 10% interest rate, since the contract only specifies that the interest rate be "no less than 10%," rather than a fixed-rate of 10%. Tonnelle's Memorandum of Law at 14. The arbitrator made this determination while assessing damages, and selected a rate that was required under the contract, but would provide the lowest damages figure against Tonnelle. Phase II Partial Final Award at 17, 19. It is unclear how Tonnelle would have preferred the arbitrator to construe this provision; had he written an award for "at least 10%," it would not be clear how much Tonnelle would owe in damages. Nor does Tonnelle suggest any other alternative. Once the arbitrator found against Tonnelle, he needed to select a damages figure pertaining to interest, and selected the one most favorable to Tonnelle. In so doing, the arbitrator "effect[ed] the general purpose of the…Contract and acted in a reasonable manner." *Platinum Underwriters Bermuda, Ltd. v. Excalibur Reinsureance Corp.*, No. 12-70, 2013 WL 3716528 at *5 (E.D. Pa. July 15, 2013) (upholding an arbitration award that respondents claimed "impermissibly rewr[ote] the…contract" in awarding damages).

### III. Loan agreement's definition of affiliate

Next, Tonnelle accuses the arbitrator of improperly re-writing the contract by ignoring the loan agreement's definition for the term "affiliate," and substituting a definition from case law and business code. Tonnelle's Memorandum of Law at 15. Tonnelle mischaracterizes the arbitrator's opinion. The arbitrator *does* cite the definition of "affiliate" from the loan agreement, and specifically notes that *Tonnelle's* position at the arbitration "ignore[d] the Loan Agreement, which broadly define[d] Affiliate." Phase II Partial Final Award at 15. The arbitrator then pastes the text of the definition of Affiliate from the loan agreement and refers to "the reasons cited in SB-PB's post hearing brief" as the basis for concluding that Verrichia exercised control over ATNV. *Id.*

8

Only after that does the arbitrator go on to cite Texas law and the Texas Business Organization Code as *additional* support for his ruling. *Id.* Tonnelle may be understandably frustrated that the arbitrator simply adopted SB-PB's reasoning, but even an award that finds one party "more credible" after reviewing the evidence, without additional explanation, is a sufficient basis to confirm an arbitration award. *GPS of New Jersey M.D., P.C. v. Horizon Blue Cross & Blue Shield*, No. 22-6615, 2023 WL 5815821 at *6 (D.N.J. Sept. 8, 2023).

    **IV.**    **Construction of "acquire and develop"**

Tonnelle further claims that the arbitrator improperly "rewrote the contract" to construe "acquire and develop" as "acquire *or* develop." Tonnelle's Memorandum of Law at 15-16. However, the arbitrator found two independent bases for determining that Tonnelle was required to submit a loan request in this instance. First, in reviewing this provision, the arbitrator determined that it was ambiguous, and therefore he had to use principles of contract construction in order to interpret it. Phase II Partial Final Award at 12-14. The relevant clause in the contract reads: "If in the future, Borrower or its Affiliates *acquire and develop* real property….Borrower will, or will cause its Affiliates to, submit a written request to Lender for a new loan from Lender or one of Lender's Affiliates to finance the *acquisition or development* of such Potential Project…". *Id.* at 14. Both of the italicized clauses are in the same sentence, and the arbitrator determined it was unclear whether both acquisition and development were required in order to trigger the loan request. Moreover, the arbitrator noted that the provision contains multiple references to property that had not yet been developed. *Id.* Again, whether or not these are errors in contract interpretation, it does not escape the bounds of rationality to decide in this manner. The Third Circuit affirmed confirmation of an award where the arbitrator's decision was primarily based on "inexplicable quotation of language that was not present in the agreement." *Brentwood Med.*

9

*Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 243 (3d Cir. 2005). Nevertheless, the presence of "sufficient substance in the remainder of the discussion" was enough to confirm the award. *Id.*

Second, the arbitrator separately found that even if the property was required to be acquired *and* developed, the evidence established that Tonnelle's intention was to develop the Two Farms property, citing testimony from Franklin and Verrichia, as well as a marketing presentation by Tonnelle. Phase II Partial Final Award at 14-15. Tonnelle may wish that the arbitrator found other evidence or testimony more persuasive, but this Court "may not re-weigh evidence to decide whether to vacate the award." *Lex v. Weinar*, No. 13-mc-96, 2015 WL 1455810 at *4 (E.D. Pa. Mar. 31, 2015) (citations omitted).

## V.     The survival provision in § 4.27(f)

Tonnelle claims the arbitrator misconstrued the contract in determining that the survival provision of the contract survived default. The survival provision reads in full:

> Notwithstanding anything to the contrary herein, in the other loan documents, satisfaction of the indebtedness, or maturity of the loan, the terms set forth in this section 4.27 shall survive in full force and effect for thirty-six (36) months after the date hereof.

Tonnelle's Memorandum of Law at 7. This language is not crystal clear, which in itself militates against disturbing the arbitrator's findings. *See Century Indem. Co. v. Fencourt Reinsurance Co., Ltd.*, 640 F.Supp.2d 626, 627 (E.D. Pa. 2009) (confirming arbitration award and finding that "because the language of [a contract provision] was somewhat ambiguous, the panel's interpretation of the agreement is not 'completely irrational . . . '"). The provision appears to read as if it allows the terms to survive even if the loan is satisfied or matures and does not mention default at all. Tonnelle asserts that the language indicates the *only* two conditions in which the

contract terms survive. However, nothing in the provision indicates that it is exclusive. In other words, it is plausible that the language merely delineates some of the conditions in which the terms survive, but not all. Indeed, the provision does not say that the terms shall survive "only" upon indebtedness or maturity of the loan. Moreover, Franklin's testimony clearly states that the terms survived in the event of default. ECF No. 1-8 at 124:1-19 ("Q. What happened if Mr. Verrichia was in default, do you think Section 4.27(f) survived? A. It still survives."). Tonnelle calls Franklin's reasoning "illogical" without explanation. Tonnelle's Memorandum of Law at 17. The arbitration decision is clearly rational based on the arbitrator's reading of the evidence.

### VI. Damages for the Warwick project

Finally, Tonnelle contends that the arbitrator exceeded his powers by re-writing the contract to allow damages for the Warwick project on the basis that Tonnelle failed to comply with § 4.27(c). Tonnelle's Memorandum of Law at 19-21. Tonnelle argues that since submitting a Loan Request for the Warwick project discharged its obligations. *Id.* at 19. Further, Tonnelle claims that SB-PB failed to accept their Loan Request, and only then did they seek financing from an outside source, arguing that the arbitrator "contorted the evidence" to find that SB-PB accepted their Loan Request. *Id.* Ultimately, this is another instance of Tonnelle disagreeing with the arbitrator's characterization of the evidence, and the respondent's "disagree[ment] with the Arbitrator's decisions related to evidentiary issues. . . is not an adequate basis for vacating the award. *See E. Atl. States Reg'l Council of Carpenters v. P. Santos Co., Inc.*, No. 22-613, 2022 WL 1557379 at *2 (E.D. Pa. May 17, 2022).

The arbitrator found that for the Warwick project, Tonnelle actually did submit a Loan Request, unlike the other projects for which it failed to even do that. Phase II Partial Final Award at 16. Exercising its right of first refusal, SB-PB accepted Tonnelle's proposal. *Id.* at 17. The

11

damages therefore relate to the breach of an actual contract that was formed, not just the breach of a requirement to make an offer. *Id.* Tonnelle's dispute with the arbitrator over the meaning and the quality of the evidence again falls short, as the arbitrator cited to evidence in the record supporting his contention that Tonnelle made a proposal, and SB-PB accepted it. *Id.* at 16-17. Tonnelle's view of the quality of the evidence is not sufficient to vacate the award.

### VII. Manifest disregard for the law

Although Tonnelle broadly characterizes the entire award as exhibiting manifest disregard for the law, it cites only one instance in which the arbitrator allegedly ignored controlling legal precedent. Tonnelle asserts that damages can only be obtained from breach of an option contract if the party was ready, willing, and able to perform, citing *Koch Industries, Inc. v. Sun Co., Inc.*, 918 F.2d 1203 (5th Cir. 1990). Tonnelle's Memorandum of Law at 17. Tonnelle falls short of showing manifest disregard for multiple reasons.

In the first instance, Tonnelle relies on *Koch* and the Fifth Circuit does not itself set out binding Texas law, so without providing further citations to Texas law, the arbitrator cannot have been said to be aware of binding Texas law.[1] *See Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011) ("In this diversity action, we must apply Texas law as interpreted by Texas state courts."). More substantively, *Koch* only cites to one Texas Court of Appeals case for the proposition that an option holder must be ready, willing, and able to perform in order to recover damages, *Olson v. Bayland Pub., Inc.,* 781 S.W.2d 659, 664 (Tex. Ct. App. 1989). In *Olson*, the court found that the parties were ready, willing, able to close despite scant testimony from the

---

[1] It is true that when "to the extent that a prior panel of [the Fifth] Circuit has ruled on a state law issue and has not been superseded by either state case law or a change in statutory authority, we are also bound by the prior decisions of this Circuit as to the meaning of state law." *Lozovyy v. Kurtz*, 813 F.3d 576, 580 (5th Cir. 2015) (cleaned up). However, the panel in *Koch* does not rule on any specific issue, but rather applies existing Texas law to a particular factual scenario. 918 F.2d at 1214-15.

parties, and concluded that the relevant legal standard was whether "there was more than a scintilla of probative evidence from which the jury could have concluded that appellee was ready, willing, and able to close the transaction." *Id.* Moreover, In *Koch* itself, the Fifth Circuit found the party was not ready, willing, and able when it "never evinced an intention to accept the offer," had advised against making the purchase, and did not contradict claims that they did not want to make the purchase; far from the facts as found by the arbitrator in this case. 918 F.2d at 1214-15 (cleaned up).

Here, the arbitrator cited several pieces of evidence in support of his conclusion that SB-PB was ready, willing, and able to close the transaction. The arbitrator cites Franklin's testimony indicating that the Two Farms Project was a "great way to fix the problems with the Tonnelle project," that SB-PB would have ended the current litigation had Tonnelle brought it that project, that Franklin would have been interested in financing the Two Farms Project on strong terms, and that SB-PB did deals like the Two Farms and Hatboro Projects frequently. Phase II Partial Final Award at 19. Tonnelle protests that the arbitrator misunderstood the testimony and ignored more persuasive evidence. Tonnelle's Memorandum of Law at 17-19. Yet again, it is not this Court's role to re-weigh evidence or reconsider the meaning of specific pieces of testimony. *See Day & Zimmerman, Inc. v. SOC-SMG, Inc.*, No. 11-6008, 2012 WL 5232180 at *5 (E.D. Pa. Oct. 22, 2012) ("the court may not question the credibility of witness testimony or re-weigh evidence presented before an arbitration panel."). Tonnelle may take a more stringent view of the "ready, willing, and able" requirement, but the arbitrator's reasoning, legal conclusions, and citations to evidence are sufficient to show that he did not manifestly disregard existing Texas law.

**VIII.   Partiality**

Tonnelle's final argument restates its previous critiques of the arbitrator's decision and concludes that only an arbitrator displaying "evident partiality" could have ruled in favor of SB-PB. Tonnelle's Memorandum of Law at 22-24. Far from being "powerfully suggestive" of bias, all this demonstrates is that Tonnelle did not approve of the arbitrator's decision. Tonnelle cites to no conflicts of interest or unfairness in the proceedings that would lead an objective observer to infer bias. *See Nowak v. Pa. Pro. Soccer, LLC*, 156 F.Supp.3d 641, 647 (E.D. Pa. 2016) (finding no partiality even where arbitrator is openly critical of one party). Tonnelle's only evidence of partiality includes the same critiques of the arbitrator's weighing of the evidence and agreement with SB-PB's positions. Tonnelle has not pointed to any facts "demonstrat[ing] that a reasonable person would have concluded that the arbitrator was partial to [SB-PB]." *Bapu Corp. v. Choice Hotels Int'l, Inc.*, 371 F. App'x 306, 310 (3d Cir. 2010).

Tonnelle has not cleared the high bar necessary to vacate the arbitration award. As a result, Tonnelle's petition to vacate the award is **DENIED**, and SB-PB's cross-motion to confirm the award is **GRANTED**. An appropriate order follows.

BY THE COURT:

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**